J. H. CALDWELL v. COMMISSIONERS OF ROBESON COUNTY.

*Counties and County Commissioners—School Districts.*

See syllabus in preceding case.

MOTION for injunction in an action pending in ROBESON Superior Court, at Chambers in Fayetteville, in December, 1883, before *McKoy, J.*

The plaintiff appealed.

*Mr. J. D. Shaw,* for plaintiff.
*Mr. T. A. McNeill,* for defendants.

MERRIMON, J. This case is in all material respects like that of *McCormac* v. *Commissioners, ante.*

The statute, Acts 1883, ch. 292, is in no material respects different from the statute, Acts 1883, ch. 282, construed in the case cited *supra,* except that it provides for the "Lumberton Graded School," to be established in Lumberton school district, known as district No. 70 for white children in Robeson county. It was ratified and became operative on the 9th of March, 1883.

At the time of the passage of the act (ch. 292), the school district No. 70 was laid off, ascertained and established according to law.

After the passage of this act, the county commissioners on the 19th of April, 1883, undertook to change the boundary of district No. 70, in question, whereby they materially reduced the same in area, and left out of the district numerous citizens and very considerable taxable property. This order seems to have been made mainly, if not wholly, at the instance of tax-payers who desired to be left out of the district, with the view to escape the assessment prescribed and allowed by the act, if a majority should vote in favor of it. The election was held at the time designated in the act, within the district as reduced in

area, the electors outside of this boundary, but within the boundary as established at the date of the ratification of the act, not voting or participating in it, and a part of the electors inside of the reduced area, not voting. The majority of the votes cast were in favor of the assessment.

The purpose of the statute was, plainly, to establish a graded school in school district No. 70 as it existed at the time the act was ratified, and to assess the taxpayers therein as prescribed, if a majority of the qualified voters therein should vote "for school." The legislature had power, and it was its sole province to so provide, and in view of the nature and importance of the thing to be done, it must be presumed that there were controlling considerations that led it to designate district No. 70 as the locality where the school should be established and within which the taxable property and polls should be assessed to support it, if the majority of the electors should vote in favor of it. The power to designate the location of the school and provide for its support rested solely in the legislature—its action was conclusive, unless it had seen fit to authorize the county commissioners, or some other agency to change it. There is nothing in the act express or implied, that we can see, that indicates any such purpose as that last mentioned, nor is there any policy of the state, or in the nature of the office of the county commissioners as such, or as the county board of education, that implies such power. The public school law confers their powers and authority to manage the public schools and establish school districts. It cannot be supposed, in the absence of any provision in the act to that effect, or in any statute, that the legislature intended to confer on the county commissioners as such, or as the county board of education, to make school district number seventy, for the purposes of the graded school, greater or smaller, or remove it entirely from where it was at the time the act was ratified, at their discretion, or as their judgment might suggest, ought to be done. It might have so provided, but it did not, and the power to do so is not inherent in the county commissioners as

such or as the county board of education. The county commissioners were required by the act to submit the question of assessment to the qualified voters of the district designated in the act. This done, their powers were to be at an end. The school, when established, was to be exclusively under the control of the board of trustees provided for, in the exercise of their corporate functions.

In undertaking to change the bounds of the district in question, the county commissioners transcended their powers under the statute. The voice of the qualified voters to be taken was not taken. The election was void, and the assessments were unauthorized. The court ought, therefore, to have granted the injunction as prayed for in the complaint. *McCormac v. Commissioners, ante.*

The order denying the motion for an injunction must be reversed. Let this be certified to the superior court of Robeson county to the end that the court may proceed according to law. It is so ordered.

Error.                                    Reversed.